**Beatrice R. RUDDLE, Appellant,**

v.

**Luke C. MOORE et al., Appellees.**

**No. 21748.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 10, 1969.

Decided March 19, 1969.

Mr. Joel D. Blackmon, Washington, D. C., for appellant.

Mr. Melvin Hirshman, Washington, D. C., for appellee Burch. Mr. Paul Shiffman, Washington, D. C., entered an appearance for appellee Perkins.

No brief was filed and no appearance was entered on behalf of appellee Moore.

Before BAZELON, Chief Judge, and McGOWAN and LEVENTHAL, Circuit Judges.

PER CURIAM:

The question on this appeal is what rule governs the distribution of funds recovered from a confidence man who swindled different victims at different times and then commingled the lucre. The District Court was unable to trace the recovered funds to the deposit of any one victim or to conclude that any victim's deposit had been wholly dissipated prior to the recovery. Accordingly, following equitable principles, it distributed the funds among the victims pro rata according to their respective losses.

Appellant, the last swindled, contends that under the rule in Clayton's Case, 1 Merivale 572 (1816 Ch.), she is entitled to be recompensed in full before prior victims may recover anything at all. This rule applies the first-in, first-out (FIFO) principle of accounting to a trust "account" containing indistinguishable funds of several beneficiaries: it establishes a rebuttable presumption that the trustee wrongfully converted the funds in the order in which they were paid in. *See* Knatchbull v. Hallet, L.R. 13 Ch.Div. 696 (1880); Empire State Surety Co. v. Carroll County, 194 F. 593, 605 (8 Cir. 1912); In re A. Bolognesi & Co., 254 F. 770, 773 (2 Cir. 1918).

The rule in Clayton's Case has never been adopted in this jurisdiction. It has not, however, been clearly rejected. Our nearest case in point is Brown v. Christman, 75 U.S.App.D.C. 203, 126 F.2d 625 (1942), in which several landlords sought to recover from an administratrix rentals collected for them by the deceased (and wrongfully converted in part) over a two month period. In holding for the plaintiffs, this court indicated that an equitable distribution of the remaining funds among all injured landlords was in order. It made no mention of Clayton's

Case; but since no landlord claimed priority over the others and since the question of the rule of distribution among them was not directly in issue, we do not think this omission amounts to a rejection.

Thus, the District Court's consideration of this case was untrammeled by any authoritative pronouncements of this court. It had on the one hand the hoary but largely uniform federal precedents applying the rule in Clayton's Case to comparable facts,[1] and on the other hand the dubious merits of the rule itself. As Professor Scott pointed out during the golden age of Clayton's Case, the rule recommends itself in situations where some rule—any rule—will do, but in no others. Thus, the rule makes sense as a statement of the presumed intent of parties to an agreement (*e. g.*, between bank and depositor), when a court must decide which funds among those paid in from time to time must be deemed to have been paid out.[2] But it has nothing to be said for it as a principle governing conflicting claims to restitution by equally wronged parties. *See* Scott, The Right To Follow Money Wrongfully Mingled with Other Money, 27 HARV.L. REV. 125, 130 n. 15 (1913).

Learned Hand, while still a District Judge, ran afoul of the rule and its misuse in In re Walter J. Schmidt & Co.,

298 F. 314 (S.D.N.Y.1923). Following Professor Scott, he boldly declared:

> The rule in Clayton's Case is to allocate the payments upon an account. Some ·rule had to be adopted, and though any presumption of intent was a fiction, priority in time was the most natural basis of allocation. It has no relevancy whatever to a case like this. Here two people are jointly interested in a fund held for them by a common trustee. There is no reason in law or justice why his depredations upon the fund should not be borne equally between them. To throw all the loss upon one, through the mere chance of his being earlier in time, is irrational and arbitrary, and is equally a fiction as the rule in Clayton's Case, supra. When the law adopts a fiction, it is, or at least it should be, for some purpose of justice. To adopt it here is to apportion a common misfortune through a test which has no relation whatever to the justice of the case.

*Id.* at 316. In a supplemental opinion, *id.* at 320, however, Judge Hand was obliged to eat his fine words upon discovering that his Court of Appeals had already decided the point with "no relation whatever to the justice of the case." Our District Court is not so burdened, and its equitable distribution is hereby

Affirmed.

---

1. In re A. Bolognesi & Co., 254 F. 770, 773 (2 Cir. 1918); Empire State Surety Co. v. Carroll County, 194 F. 593, 605 (8 Cir. 1912); In re Walter J. Schmidt & Co., 298 F. 314 (S.D.N.Y. 1923) (supplemental opinion). *See also*, Cunningham v. Brown, 265 U.S. 1, 44 S.Ct. 424, 68 L.Ed. 873 (1924) (dictum). *But see* Murry v. Hale, 203 F.Supp. 583, 595 (E.D.Ark.1962), where the court ordered a pro rata distribution, ignoring Clayton's Case and citing, inter alia, 54 AM.JUR., Trusts § 265, which describes pro rata distribution as "a fairer one than the rule in Clayton's Case." *Id.*, pp. 208–209. *Cf.* UNIFORM TRUSTS ACT § 15.

2. It is clear that the rule in Clayton's Case does not apply to a fund in which a trustee has mingled money belonging to others with his own and then made withdrawals from the common fund. The RESTATEMENT OF RESTITUTION § 211, *comment a*, says the reason is that "that rule is applicable only to situations where the intention of the depositor is controlling." *Accord*, RESTATEMENT OF TRUSTS 2d § 202, *comment i.* Why the intent of the depositor should ever have been thought to be controlling where the trustee mingles funds of persons not including himself and then makes withdrawals is a matter of no little mystery.