**In re Billy R. SHURLEY and Jane Bryant Shurley, Debtors.**

**Bankruptcy No. 92–70484–RBK.**

United States Bankruptcy Court,
W.D. Texas,
Midland–Odessa Division.

Oct. 6, 1993.

John P. Higgins, Payne & Blanchard, L.L.P., Dallas, TX, for debtors, Billy R. Shurley and Jane Bryant Shurley.

Michael G. Kelly, Odessa, TX, for Dennis Elam, Chapter 7 Trustee.

Eric J. Taube, Austin, TX, for Texas Commerce Bank—Austin, N.A.

Henry H. McCreight, Jr., Houston, TX, for Texas Commerce Bank—San Angelo, N.A.

## *OPINION*

RONALD B. KING, Bankruptcy Judge.

Objections to exemptions, filed by the Trustee and two creditors, raise two issues: (1) a factual issue regarding the value of certain jewelry and furs; and (2) a legal issue as to whether under Texas law an exemption of the cash surrender value of life insurance policies is limited under the Texas Property Code or unlimited under the Texas Insurance Code.

Billy R. Shurley and Jane Bryant Shurley (the "Debtors") filed a voluntary Chapter 7 bankruptcy case in 1992. Pursuant to sec-

tion 522(b) of the Bankruptcy Code,[1] the Debtors claimed exemptions pursuant to Texas law. Among the exemptions claimed on the Debtors' Amended Schedule C were various items of jewelry and furs listed at a total value of $14,927.75 and $650.00 respectively, and life insurance policies with cash surrender values of $30,710.36 and $14,742.86, respectively. The Trustee and two creditors, Texas Commerce Bank—San Angelo and Texas Commerce Bank—Austin (collectively "TCB"), filed similar objections to the claimed exemptions. All of the objections were agreed upon except those concerning the jewelry, furs, and life insurance policies. The questions to be decided are a factual determination as to the value of the jewelry and furs, and a question of law as to what extent cash surrender values in life insurance policies are exempt under Texas law.

## I. Valuation of the Jewelry and Furs.

Pursuant to the Texas personal property exemption scheme, a family may exempt up to $15,000 worth of jewelry as part of a $60,000 aggregate limitation. TEX.PROP.CODE ANN. §§ 42.001(a)(1) & 42.002(a)(6) (Vernon Supp.1993). A family may also exempt wearing apparel as part of the $60,000 aggregate limitation. In their Amended Schedule C, the Debtors claimed several items of jewelry with a total reported value of $14,927.75 and three furs with a total reported value of $650. Both the Trustee and TCB objected generally to the valuations of the jewelry and furs scheduled by the Debtors.

■ Under Bankruptcy Rule 4003(c), the party objecting to a debtor's exemptions has the burden of proving that the exemptions are not properly claimed. Because the Debtors' entitlement to exemption of the jewelry and furs in this case necessarily depends upon the value of such items, it follows that the objecting parties have the burden of proving that the jewelry and furs are worth more than the amounts claimed by the Debtors. In the schedules, the jewelry was divided into the categories of "Costume Jewelry," "Miscellaneous Jewelry," and "Jewelry."

### A. Debtors' Valuation in General.

The Trustee and TCB assert that the Debtors have undervalued the jewelry and furs claimed as exempt. One of the Debtors, Mrs. Jane Shurley, was responsible for valuing the jewelry and furs listed in the Debtors' schedules. Mrs. Shurley testified that the basis for her valuation was the price for which she thought she could sell the property in her hometown of Marfa, Texas on the date of filing of the bankruptcy case. In Mrs. Shurley's opinion, the values of the items were depressed because people in Marfa "are not buying anything." Mrs. Shurley formed her opinion based on conversations with "people in Marfa who have money" and a conversation with the manager of the Winn's department store in Marfa. Mrs. Shurley also testified concerning her rationale in valuing various individual items of jewelry.

■ TCB asserts that Mrs. Shurley's method of valuing the jewelry and furs was liquidation value rather than fair market value, and that the Debtors should therefore redesignate their claimed exemptions. The burden of proof is on TCB and the Trustee. FED.R.BANKR.P. 4003(c). TCB and the Trustee presented no specific opinion evidence of value to contradict the Debtors' valuation of specific items of jewelry or furs, with the exception of evidence of prior admissions by the Debtors as to the value of one lady's ring and a wedding band and the purchase price of a sapphire. Instead, TCB presented generalized evidence such as financial statements of the Debtors for the years 1989, 1990 and 1991 which all contained an asset entry entitled "Gems, art and other personal assets" with a reported value of $60,000.00. As it is impossible to ascertain which specific items of the Debtors' jewelry were included in this asset entry, the financial statements failed to carry the burden of proof.

### B. "Costume Jewelry" and "Miscellaneous Jewelry."

■ Included in the Debtors' Amended Schedule C were itemized lists of "Costume Jewelry" totaling $212.75, and "Miscellaneous

---

1. 11 U.S.C. § 522(b) (1988). Title 11 is referred to herein as the Bankruptcy Code.

Jewelry" totaling $195.00, which the Debtors claimed as exempt. At the hearing on objections to exemptions, neither TCB nor the Trustee produced evidence concerning the value of these items. Therefore, the objecting parties failed to carry their burden of proof and the objection is overruled as to the items in these categories.

## C. Furs.

■ In the Debtors' Amended Schedule C, three furs were itemized under the category of wearing apparel. At the hearing on objec-

tions to exemptions, the only evidence concerning the value of these items was Mrs. Shurley's testimony, which supported the Debtors' valuations. As such, the objectors again failed to carry their burden of proof and the objection is overruled as to the furs.

## D. "Jewelry."

On the Debtors' Amended Schedule C—Exhibit "3," eleven items were included under the category of "Jewelry," three of which were as follows:

| | Scheduled Value | Insurance Value |
|---|---|---|
| 1 lady's Marquise diamond ring with 10 round diamonds 1.94 cts., platinum mounting, Marquise—1.96 cts | $3,000.00 | $12,950.00 |
| 1 lady's diamond and platinum mounting for sapphire 14.27 cts. with 16 round diamonds 1.47 cts. | 3,500.00 | Not listed |
| 14 K gold open texture wedding band a/kw eternity rings on lock side the bands are set with 54.005 ct. diamonds, 2.70 cts. approximately | 1,500.00 | 3,416.00 |

At the hearing on objections to exemptions, counsel for TCB introduced into evidence copies of the Debtors' homeowners insurance policies for the years 1979–1980 and 1986–1987. Attached to each policy were listings of jewelry which were prepared by the Debtors for the purposes of obtaining casualty insurance. The valuations assigned to each item on the lists were based on an appraisal Mrs. Shurley obtained for insurance purposes. The two lists were identical except for the addition of a gold wedding band in the 1986–1987 policy attachment.

■ The valuations assigned to each item of jewelry in the insurance policy attachments constitute admissions of the Debtors as to the value of each item listed in the attachments. FED.R.EVID. 801(d)(2). Thus, the valuations have some evidentiary weight. *Waring v. Commissioner*, 412 F.2d 800 (3rd Cir.1969) (valuation of asset reported in taxpayer's return was an admission and entitled to weight as evidence). Specifically, only two of the eleven articles of jewelry the Debtor attempted to exempt can be located in the attachments to the insurance policies: the

lady's Marquise diamond ring and the gold wedding band. Mrs. Shurley valued these items in her schedules at $3,000.00 and $1,500.00, respectively. These items were valued in the insurance policies, however, at $12,950.00 and $3,416.00, respectively. In addition, Mrs. Shurley testified that she paid $12,000.00 or $14,000.00 for the sapphire which is now mounted on a platinum ring and valued in the Amended Schedule C at $3,500.00. Such evidence does indicate that the items may be worth more than Mrs. Shurley reported. Although the insurance valuations constitute admissions by the Debtors, however, they could represent retail replacement values in 1979–1980 or 1986–1987, rather than fair market values as of the date of the filing of the petition in 1992. Similarly, the purchase price of the sapphire at an unspecified time may have been in excess of its value in 1992.

■ Pursuant to the exemption provision of the Bankruptcy Code, value "means fair market value as of the date of the filing of the petition." 11 U.S.C. § 522(a)(2) (1988); *In re Mitchell*, 103 B.R. 819, 821 (Bankr.

W.D.Tex.1989). Fair market value has been defined as "the price which a willing seller under no compulsion to sell, and a willing buyer under no compulsion to buy, would agree upon after the property has been exposed to the market for a reasonable amount of time." *In re Markowitz Bldg. Co.,* 84 B.R. 484, 487 (Bankr.N.D.Ohio 1988). In determining fair market value, the Court must consider the evidence of value produced by the parties and determine the appropriate value. *In re Rehbein,* 49 B.R. 250, 253 (Bankr.D.Mass.1985). In making such determination, "the Court is not bound by any figure in particular, but merely guided by them all." *Id. (citing In re Development, Inc.,* 36 B.R. 998, 1004 (Bankr.D.Haw.1984)).

 The problem lies in the objectors' *method* of attacking the Debtors' valuations. While the Court must consider evidence of value produced by each party, neither TCB nor the Trustee produced appraisals or other expert opinion evidence of the value of specific items of jewelry. Rather, the objectors merely produced evidence, in the form of admissions, that the Debtors' valuations may be too low. While the valuations stated in the Debtors' insurance policy attachments and the purchase price of the sapphire constitute some evidence of value, such evidence is not sufficient to determine a proper valuation. As previously indicated, Bankruptcy Rule 4003(c) assigns to the objectors the burden of proving that the Debtors' exemptions are not properly claimed. Such burden is by a preponderance of the evidence. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Magnus,* 84 B.R. 976, 978 (Bankr.E.D.Pa.1988); *In re Woodford,* 73 B.R. 675, 679 (Bankr.N.D.N.Y. 1987). "If the evidence is such that a decision on a point cannot be made one way or the other, the party with the burden of proof loses." *Texas Distrib., Inc. v. Local 100, United Ass'n of Journeymen & Apprentices,* 598 F.2d 393, 402 (5th Cir.1979); *In re Blizard,* 81 B.R. 431, 432 (Bankr.W.D.Ky.1988).

 Such are the circumstances in this case. Although the objectors presented some evidence that the Debtors' valuations were lower than market value, the purchase price of the sapphire and the valuations contained in the insurance policy attachments appeared to be higher than market value. Any attempt to determine an intermediate valuation without the aid of expert opinion evidence would be speculation. To deny a debtor an exemption which is based upon a dollar limitation, the objecting party cannot carry its burden of proof by merely impeaching the Debtors' valuation. Competent evidence, which affirmatively demonstrates a higher valuation by a preponderance of the evidence, is required. Because Rule 4003(c) assigns the burden of proof on the issue of whether the Debtors' exemptions are properly claimed to the objecting party, the Debtors do not have the burden of proving that their valuations are correct. To force the Debtors in this case to "redesignate" their claimed exemptions by re-valuing the individual items and claiming a lesser amount as exempt would be tantamount to shifting the burden of proof to the Debtors to prove value. Furthermore, the objectors might then file additional objections to the Debtors' "re-designated" valuations without submitting competent opinion evidence. Such a result would be a waste of the Court's time and the parties' resources. Because the objectors did not carry the burden of proof, the rings must be valued as indicated in the Schedule.

As for the remaining nine items under the "Jewelry" category, these items were not described on the insurance policy attachments. Furthermore, the objectors produced no appraisal or other competent evidence of the value of such items.[2] Therefore, the objectors have failed to carry their burden of proof as to these items, and the objection is overruled as to the remaining nine items of "Jewelry."

**II. Life Insurance.**

On their Amended Schedule C, the Debtors claimed two life insurance policies with cash surrender values of $30,710.36 and $14,742.96 as exempt under TEX.INS.CODE ANN.

---

2. There was some evidence produced concerning the loose stones. Such evidence actually tended to prove that Mrs. Shurley overvalued these items.

art. 21.22, § 1 (Vernon Supp.1993). The Debtors maintain that such provision permits unlimited exemption of the cash surrender values of their life insurance policies. TCB and the Trustee assert that the amount of cash surrender values exempted must not, when combined with the Debtors' other claimed exemptions of personal property, exceed the $60,000 limitation contained in TEX. PROP.CODE ANN. § 42.001(a)(1) (Vernon Supp. 1993).

The two relevant statutes were both amended by the Texas Legislature in 1991.[3] The Texas personal property exemption scheme is contained in the Texas Property Code, which provides, in pertinent part:

§ 42.001. **Personal Property Exemption.**

(a) Personal property, as described in Section 42.002, is exempt from garnishment, attachment, execution, or other seizure if:

(1) the property is provided for a family and has an aggregate fair market value of not more than $60,000 ...

. . . . .

§ 42.002. **Personal Property.**

(a) The following personal property is exempt under Section 42.001(a):

. . . .

(12) the present value of any life insurance policy to the extent that a member of the family of the insured or a dependent of a single insured adult claiming the exemption is a beneficiary of the policy.

The Texas Insurance Code also contains a provision concerning the exemption of life insurance which provides, in relevant part:

Art. 21.22. **Unlimited Exemption of Insurance Benefits From Seizure Under Process.**

Sec. 1. Notwithstanding any provision of this code other than this article, all money or benefits of any kind, including policy proceeds and cash values, to be paid or rendered to the insured or any beneficiary under any policy of insurance issued by a life, health or accident insurance company, including mutual and fraternal insurance, or under any plan or program of annuities and benefits in use by any employer, shall:

(1) inure exclusively to the benefit of the person for whose use and benefit the insurance is designated in the policy;

(2) be fully exempt from execution, attachment, garnishment or other process;

(3) be fully exempt from being seized, taken or appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of the insured or of any beneficiary, either before or after said money or benefits is or are paid or rendered; and

(4) be fully exempt from all demands in any bankruptcy proceeding of the insured or beneficiary.

Thus, the question is the extent to which cash surrender values in life insurance policies can be exempted under Texas law: fully exempt under the Texas Insurance Code, or included within the $60,000 limitation under the Texas Property Code. In addition, at the hearing on objections to exemptions, counsel for TCB orally argued that the amendment to Article 21.22 of the Texas Insurance Code violates the Commerce Clause or the Bankruptcy Clause of the United States Constitution, and is therefore preempted by federal law.

**A. Statutory Conflict.**

■ Prior to 1991, the issue of the exemptibility of cash surrender values in life insurance policies in Texas had been decided in *In re Brothers*, 94 B.R. 82 (Bankr. N.D.Tex.1988). In *Brothers*, the debtor attempted to exempt the cash surrender values of two life insurance policies under Article 21.22 of the Insurance Code. Such provision had been amended approximately eighteen months prior to the hearing on the trustee's objections to exemptions. Previously, Article 21.22, § 1 provided:

---

**3.** Act of May 24, 1991, 72d Leg., R.S., ch. 175, § 3, 1991 TEX.SESS.LAW SERV. 789, 792 (Vernon) (codified as an amendment to TEX.PROP.CODE ANN. §§ 42.001 & 42.002 (Vernon Supp.1993)); Act of June 15, 1991, 72d Leg., R.S., ch. 609, § 1, 1991, TEX.SESS.LAW SERV. 2217 (Vernon) (codified as an amendment to TEX.INS.CODE ANN. § 21.22, § 1 (Vernon Supp.1993)).

No money or benefits of any kind to be paid or rendered on a weekly, monthly or other periodic or installment basis to the insured or any beneficiary under any policy of insurance issued by a life, health or accident insurance company, including mutual and fraternal insurance, or under any plan or program of annuities and benefits in use by any employer, shall be liable to execution, attachment, garnishment or other process or be seized, taken or appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of the insured or of any beneficiary, either before or after said money or benefits is or are paid or rendered, except for premiums payable on such policy or a debt of the insured secured by a pledge thereof.

TEX.INS.CODE ANN. art. 21.22, § 1 (Vernon 1981) (amended 1987 & 1991).

By an amendment of March 24, 1987, the words "on a weekly, monthly or other periodic or installment basis" were deleted from the statute. TEX.INS.CODE ANN. art. 21.22, § 1 (Vernon Supp.1988) (amended 1991). The effect of such change was to make "lump sum payments made under an insurance policy exempt from execution for debt." *Brothers* at 84. The debtor in *Brothers* contended that "Article 21.22(1) exempts payments made under an insurance policy without regard to the aggregate value limitations set forth in the Property Code, and that the amending of Article 21.22(1) impliedly repealed the provisions of the Property Code addressing cash surrender values." *Id.* at 83.

With respect to funds which properly qualified for exemption under Article 21.22, § 1, *Brothers* noted that "[a]pparently, these funds are exempt without limitation as to amount, and without regard to the exemptions provided in the Property Code." *Id.* at 84 (citing Teofan & O'Neill, *Creditors and Consumer Rights, Annual Texas Law Survey*, 42 Sw.L.J. 199, 215 (1988)). The debtor in *Brothers*, however, was not permitted to exempt the cash surrender values under Article 21.22 because the court held that such funds were not payments made "under an insurance policy." Furthermore, *Brothers*

held that the 1987 Amendment of Article 21.22 did not repeal the provision of the Property Code which dealt with cash surrender values.

In 1991, the provisions concerning the exemption of life insurance policies contained in the Texas Property and Insurance Codes were both amended. In the Property Code, the term "cash surrender value" was changed to "present value." In the Insurance Code, the caption of the statute was changed to read "Unlimited Exemption of Insurance Benefits from Seizure Under Process." The amendment added the word "unlimited." Also, the amendment made clear that the benefits covered by the section "includ[e] policy proceeds and *cash values*." The language of the statute clearly indicates an unlimited exemption of all life insurance benefits.

The legislative history suggests the same result as the plain meaning of the words of the amended statute. It is a fundamental rule that in any case involving statutory construction, "a court must look to the intent of the legislature and must construe the statute so as to give effect to that intent." *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex.1982) (citing *State v. Terrell*, 588 S.W.2d 784, 786 (Tex.1979)). Generally, the intent is ascertained "from the language of the statute and from the legislative history of the statute." *Grunsfeld v. State*, 813 S.W.2d 158, 168 (Tex.App.—Dallas 1991), *aff'd*, 843 S.W.2d 521 (Tex.Crim.App. 1992). "[I]f the intent of the Legislature is ascertained, courts must enforce that intent even though the intent is not altogether consistent with the strict letter of the statute." *Terrell* at 786 (citing *State v. Dyer*, 145 Tex. 586, 200 S.W.2d 813 (1947)). In amending Article 21.22, the legislative purpose was to provide "unlimited exemption from seizure of certain life ... insurance benefits." SENATE COMM. ON ECONOMIC DEVELOPMENT, BILL ANALYSIS, Tex.S.B. 1261, 72d Leg., R.S. (1991). The transcripts of the hearings on Senate Bill 1261 (which amended Article 21.-22) indicate that the legislators intended that all proceeds of life insurance policies, including cash surrender values, be fully exempt under Article 21.22 rather than being subject

to the limitation imposed by sections 42.001 and 42.002 of the Property Code.[4] Op.Tex. Att'y Gen. No. DM–125 (1992). Therefore, the Court finds that cash surrender values of life insurance policies are fully exempt under Article 21.22, § 1 of the Texas Insurance Code.

## B. Federal Preemption.

Counsel for TCB argues that Article 21.22, § 1(4) is preempted by either the Commerce Clause or the Bankruptcy Clause of the United States Constitution. The relevant portion of the Texas statute reads as follows:

> Sec. 1. Notwithstanding any provision of this code other than this article, all money or benefits of any kind, including policy proceeds and cash values [of a life insurance policy], shall:
>
> . . . .

> (4) be fully exempt from all demands in any bankruptcy proceeding of the insured or beneficiary.

TEX.INS.CODE ANN. art. 21.22, § 1 (Vernon Supp.1993). TCB argues that Article 21.22, § 1 conflicts with federal law because under the Commerce Clause or the Bankruptcy Clause, Congress has the exclusive ability to regulate a bankruptcy case and its assets. TCB asserts that the language of the statute and the legislative history indicate an attempt by the Texas Legislature to create bankruptcy rights. Furthermore, TCB maintains that Article 21.22, § 1 is ineffectual "as a result of the violation of the United States Constitution and federal preemption." Thus, the argument goes, the status of the law in Texas reverts back to the former Article 21.22, and the treatment of cash surrender values in life insurance policies re-

---

4. I. HARRIS: The Insurance Code apparently exempts life, health and accident insurance ... proceeds from execution, attachment, garnishment or other process of law. However the exemption statute [contained in the Property Code] places a cap on the dollar amount of property which can be exempted, fifteen thousand per person, thirty thousand per family. [The] Insurance Code ... appears to exempt all those proceeds, but some creditors have attempted to reject the caps, particularly in the bankruptcy situations. This ... would clarify to the point where it would not ... be subject to any caps and full exemption ... is available to the families.

 . . . .

DAVIS: Mr. Chairman I think this bill's been carefully drafted and it does exactly what Senator Harris says. Be happy to answer any questions.
[?]: ... Dean[,] does it exempt ... all proceeds of life insurance[?]
DAVIS: Yes it does.
[?]: And what's the current law?
DAVIS: The current law tries to do that too but ... it runs afoul ... of what is exempt in the Property Code when it comes to bankruptcy. Consequently insurance proceeds ... counted in that ... calculation for bankruptcy as opposed to what I think the Legislature really intended for it to do when they tried to amend it—or did amend it and tried to work on it ... just three sessions ago so that those proceeds absent for all the creditors and absent ... being able to use the proceeds to pay off any debt against the proceeds, ... would be exempt from any kind ... of execution.
*Hearings on S.B. 1261 Before the Senate Economic Development Committee, Subcommittee on Insurance*, 72d Leg., R.S. 1 (April 15, 1991) (tran-

script of Tape 1, Side 2, available from Senate Staff Services Office).

\* \* \* \* \* \*

PARKER: Senate Bill 1261 by Ike Harris is a bill that ... provides for unlimited exemption for life, health and accident insurance benefits from seizure under process, execution, attachment, garnishment. This apparently has been approved in bankruptcy courts throughout the United States. Texas had a limitation, this removes the limitation to protect these funds from creditors ... for the benefit of ... survivors.
*Hearings on S.B. 1261 Before the Senate Economic Development Committee*, 72d Leg., R.S. 1 (April 25, 1991) (transcript of Tape 1, Side 2, available from Senate Staff Services Office).

\* \* \* \* \* \*

I. HARRIS: Mr. President I move to suspend the regular order of business to bring up Senate Bill 1261. It deals also with the Insurance Code [section] 21.22 which ... deals with benefits. And present law in Texas that the Insurance Code exempts life, health and accident insurance proceeds from execution, attachment, garnishment or process of law. That's obviously become rather important in the recent years because of bankruptcy problems. But there is some question in Section [42.001 of the Property Code] that it's only fifteen thousand per individual and thirty thousand per family. This amends the Insurance Code to be sure that ... this takes off the caps and is no longer a problem....
*Debate on Committee Substitute to S.B. 1261 on the Floor of the Senate*, 72d Leg.R.S. 1 (April 29, 1991) (transcript of Tape 1, Side 1, available from Senate Staff Services Office).

mains the same as it was under the *Brothers* decision.

 TCB's Commerce Clause argument is misplaced. Article I, § 8, cl. 3 of the United States Constitution provides that "Congress shall have [p]ower ... [t]o regulate Commerce ... among the several states." Congress's power to establish "uniform Laws on the subject of Bankruptcies throughout the United States," however, is contained in U.S. CONST. art. I, § 8, cl. 4. As noted in COLLIER:

> [T]he grant of the bankruptcy power in its final form, although related to commerce, was not included in clause 3, which gives to Congress the power "to regulate Commerce ... among the several States...." From that it is fair to infer that the draftsmen did not wish to restrict the bankruptcy grant as they had done the power over commerce. Congress was to have an all-inclusive power, through the bankruptcy grant, to enact any legislation *reasonably framed and related to* the subject of bankruptcies, which in turn is indissolubly linked to commerce and credit.

1 James W. Moore & Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 0.02 at 5 (14th ed. 1976) (emphasis in original). Thus, Congress's Bankruptcy Clause powers are separate and independent of its Commerce Clause powers, although both are "of equal dignity." *Pillow v. Avco Fin. Serv. (In re Pillow)*, 8 B.R. 404, 411 (Bankr.D.Utah 1981). Clearly, the enactment of the Bankruptcy Code was pursuant to Congress's power granted under the Bankruptcy Clause. *In re Goerg*, 844 F.2d 1562, 1565 (11th Cir.1988), cert. denied, 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989).

 TCB's argument that Article 21.22 violates the Bankruptcy Clause or is preempted by the Bankruptcy Clause is also incorrect. The Supremacy Clause of U.S. CONST. art. 6, cl. 2, provides the mechanism whereby federal law preempts state law. *In re Goerg*, 844 F.2d 1562, 1565 (11th Cir.1988), cert. denied, 488 U.S. 1034, 109 S.Ct. 850, 102 L.Ed.2d 981 (1989). Although the Bankruptcy Clause gives Congress the *power* to estab-

lish uniform bankruptcy laws, it does not *require* Congress to establish uniform bankruptcy laws. *Id.; Rhodes v. Stewart*, 705 F.2d 159, 162–163 (6th Cir.1983), cert. denied, 464 U.S. 983, 104 S.Ct. 427, 78 L.Ed.2d 361 (1983); *In re Sullivan*, 680 F.2d 1131, 1137 (7th Cir.1982), cert. denied, 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982). Thus, if preemption of state laws concerning bankruptcy has occurred, it must be a creature of a *statutory*, rather than *constitutional*, enactment.

 The Court must therefore determine whether the federal statute involved in this case, the Bankruptcy Code, preempts the state statute under consideration.[5] Under section 522(b)(2)(A), Congress has provided that state law exemptions may be claimed by a debtor in bankruptcy. The Legislature of the State of Texas has the authority to provide for its citizens whatever exemptions it desires. The Legislature has seen fit to provide an unlimited exemption of the cash surrender values of life insurance policies for all debtors in Texas, whether or not they are in bankruptcy. TEX.INS.CODE ANN. § 21.22 § 1(2), (3) & (4) (Vernon Supp.1993). It would be nonsensical to hold that the exemption provision of the Texas Insurance Code is preempted by the very federal statute which authorizes its application in bankruptcy court. TCB overlooks "the long-established principle that the states retain the power to enact bankruptcy laws so long as they do not conflict with federal bankruptcy legislation." *In re Sullivan*, 680 F.2d at 1137; *Rhodes v. Stewart*, 705 F.2d at 163 (*citing Sturges v. Crowningshield*, 17 U.S. (4 Wheat.) 119 (1819)). Article 21.22 of the Texas Insurance Code is not preempted by federal law, whether constitutional or statutory.

### III. Conclusion.

Based on the foregoing, the objections to exemptions filed by TCB and the Trustee are overruled. This Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to FED.R.BANKR.P. 7052 and

---

**5.** The issue is not, as TCB maintains, a question of whether the state statute conflicts with the

Commerce or Bankruptcy Clauses of the United States Constitution.

9014. Orders overruling the objections will be rendered contemporaneously herewith.