In re Wilma Joy YOUNG, Debtor.

Bankruptcy No. 93–41057–S.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

April 4, 1994.

Andrew E. Jillson and Michael Held, Jenkins & Gilchrist, P.C., Dallas, TX, for Loan Recovery Systems I, II.

Scott A. Ritcheson, Hardy & Atherton, P.C., Tyler, TX, for debtor.

Mary E. Morrison, Munsch, Hardt, Kopf, Harr, & Dinan, P.C., Dallas, TX, for American Federal Bank.

Kyle Tatom, Wagstaff, Alvis, Stubbeman, Seamster, & Longacre, L.L.P., Abilene, TX, for First Financial Resolution Enterprises.

Bill Payne, Paris, TX, for Chapter 7 trustee Linda Payne.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before the Court the Objections of Loan Recovery Systems I, L.L.P., Loan Recovery Systems II, L.L.P., First Financial Enterprises, Inc., American Federal Bank, F.S.B., and Linda Payne, Chapter 7 Trustee, (collectively referred to as "Objectors") to Exemption Claims of Wilma Joy Young ("Debtor") pursuant to regular setting in Plano, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code on July 29, 1993. Her amended schedule of exemptions lists several categories of property which Debtor claims are exempt pursuant to Texas state law.[1] As of the date of this hearing, three separate categories of property continue to be subject to objection. First, Debtor claims as exempt two separate life insurance proceeds access accounts in the amounts of $1,982,805.00 (Account with Northwestern Mutual Life Insurance Company, Account No. 510115152) and $11,234.79 (Account with Principal Mutual Insurance, Account No. 9235294). These access accounts were created shortly after the death of Debtor's hus-

---

1. Debtor has chosen state law exemptions pursuant to 11 U.S.C. § 522(b)(2)(A) (West 1993).

band on December 20, 1990 and consist of the proceeds of death benefits paid as a result of Debtor's husband's demise plus accrued interest. Debtor claims these access accounts as exempt pursuant to article 21.22 of the Texas Insurance Code.[2] Objectors[3] object that this provision of the Insurance Code is inapplicable to the proceeds of an insurance policy. Also, at issue is the question of the exemptibility of the interest which has accrued on the access accounts since the February 1, 1991 date on which they were established. From the date of establishment until the filing of Debtor's petition over $242,468.97 in interest has accrued. During this prepetition period Debtor has expended approximately $280,000.00 from one of these accounts and the parties disagree as to whether the amount expended should be deemed to come from principal (first in, first

out) or the later earned interest (last in, first out).

Second, Debtor claims as exempt the cash surrender values of two life insurance policies in which she is the insured and her daughters are the beneficiaries. These policies are valued in Debtor's schedules at $47,032.72 (Northwestern Mutual Life Insurance Policy No. 7371580) and $41,431.50 (Northwestern Mutual Policy No. 8593571) respectively.[4] Again, the basis of Debtor's claim of exemption is article 21.22 of the Texas Insurance Code. Third, Debtor claims exemptions in certain items of personal household furniture ($20,000.00), family heirlooms and jewelry, (up to $5,000.00), and wearing apparel ($5,000.00). The basis of this last exemption claim is § 42.001 of the Texas Property Code.[5] Objectors' opposition to these last

2. The present version of article 21.22 of the Insurance Code was made effective September 1, 1993, after Debtor's petition date of July 29, 1993. Procedurally, reference to an earlier version of Article 21.22, enacted and made effective as of June 15, 1991, would ordinarily be required. However, the Court notes that at the hearing none of the parties crafted their arguments on the basis of a distinction between the 1991 and 1993 version of this article. Because the changes between the 1991 and the 1993 version are not relevant to this opinion the most recent version of article 21.22 will be utilized.

**UNLIMITED EXEMPTION OF INSURANCE BENEFITS AND CERTAIN ANNUITY PROCEEDS FROM SEIZURE UNDER PROCESS**
Sec. 1. Notwithstanding any provision of this code other than this article, all money or benefits of any kind, including policy proceeds and cash values, to be paid or rendered to the insured or any beneficiary under any policy of insurance or annuity contract issued by a life, health or accident insurance company, including mutual and fraternal insurance, or under any plan or program of annuities and benefits in use by any employer or individual, shall:
(1) inure exclusively to the benefit of the person whose use and benefit the insurance or annuity is designated in the policy or contract;
(2) be fully exempt from execution, attachment, garnishment or other process;
(3) be fully exempt from being seized, taken or appropriated or applied by any legal or equitable process or operation of law to pay any debt or liability of the insured or of any beneficiary, either before or after said money or benefits is or are to be paid or rendered; and

(4) be fully exempt from all demands in any bankruptcy proceeding of the insured or beneficiary.

.    .    .    .    .

Tex.Ins.Code Ann. art 21.22 sec. 1. (Vernon Supp.1994).

3. At the regularly scheduled hearing, counsel for Loan Recovery Systems I and II, L.L.P. ("LRS") assumed, with the consent of all the objecting parties, the role of lead counsel. For this reason, the Court will address the arguments made by LRS as arguments made jointly by all objecting parties.

4. As of January 4, 1994 the cash surrender values on these accounts has correspondingly increased to $52,016.20 and $43,266.00.

5. **§ 42.001 Personal Property Exemption**

(a) Personal property, as described in Section 42.002, is exempt from garnishment, attachment, execution, or other seizure if:

.    .    .    .    .

(2) the property is owned by a single adult, who is not a member of a family, and has an aggregate fair market value of not more than $30,000, exclusive of the amount of any liens, security interests, or other charges encumbering the property.
Tex.Prop.Code Ann. § 42.001 (Vernon Supp. 1994).
   **§ 42.002 Personal Property**
(a) The following personal property is exempt under Section 42.001(a):

two exemption claims rests on the interplay of article 21.22 of the Insurance Code and the Texas Property Code which contains a laundry list of personal property exemptions. Unlike the former provision in the Insurance Code, the aggregate value of exemptions allowed by § 42.001 of the Property Code is $30,000.00. Objectors maintain that based on an interplay of these two codes Debtor has exceeded the exemption limits in § 42.-001 of the Texas Property Code. The matter was taken under advisement.

### DISCUSSION OF LAW

■ The first issue before the Court concerns whether article 21.22 of the Insurance Code permits Debtor to exempt $1,994,039.70 in life insurance proceeds currently on deposit in two insurance access accounts. Both parties view this as an issue of statutory construction. Objectors, inter alia, focus on the language in article 21.22, section 1, which provides an exemption for all money and benefits "to be paid or rendered" on account of a life insurance policy. In their view, this language requires a narrow interpretation of article 21.22, section 1 which limits the exemption to money and benefits that will be paid out prospectively on a currently unmatured life insurance policy. Since the policy proceeds in this case have already been paid, they argue that the exemption is inapplicable. Debtor, on the other hand, prefers that the Court focus on the language contained in § 1(3) which exempts the various categories of benefits from seizure "either before or after said money or benefits is or are to be paid or rendered." The Court concludes that article 21.22 unambiguously provides an unlimited exemption for the proceeds of a life insurance policy.

Reviewing the history of article 21.22 reveals that, for the most part, the proceeds of life insurance policies have been exempt under Texas law for the better part of this century. Prior to 1987, the predecessor versions of article 21.22 all provided for an exemption for the benefits of life insurance policies so long as the benefits were paid out periodically. Only benefits which were paid out in lump sums were denied exempt status. *Johnson v. Fenslage,* 724 F.2d 1138, 1142 (5th Cir.1984); *Preston v. Martin,* 69 S.W.2d 472 (Tex.Civ.App.—Beaumont 1934, no writ); *Union Sav. Bldg. & Loan v. Smith,* 62 S.W.2d 175, 176 (Tex.Civ.App.—Texarkana 1933, writ ref'd). Significantly, both the 1927 and 1951 versions of this article provided that the exemption as to insurance proceeds was to apply "both before or after said money or benefits is or are to be paid or rendered." Act of 1927, 40th Leg. p. 348, ch. 234 (formerly codified at Tex.Civ.Stat.Ann. art 5068a) (amended 1951); Act of 1951, 52nd Leg. ch. 491 (codified at Tex.Ins.Code Ann. art 21.22 (Vernon 1981) (amended 1987)).

Article 21.22 was amended in 1987 to eliminate any distinction in its applicability based on the method of payment of insurance proceeds. It has been suggested that this amendment was in response to the Fifth Circuit's decision in *Johnson v. Fenslage. In re Hosek,* 124 B.R. 239, 239–240 (Bankr. W.D.Tex.1991) (J. Clark). The article was again amended in 1991. This amendment is significant in two relevant respects. First, it provided for an unlimited exemption for insurance proceeds. Second, it expanded the exemption for insurance proceeds to include the cash surrender values of insurance policies. These amendments resolved a previous tension with the then existing version of § 42.002 of the Property Code. This tension is demonstrated by the case of *In re Brothers,* 94 B.R. 82 (Bankr.N.D.Tex.1988).

In *Brothers,* a chapter 7 debtor claimed as exempt, pursuant to article 21.22 of the Insurance Code, the cash surrender value of a life insurance policy. At that time, the only

(1) home furnishings, including family heirlooms;

.  .  .  .  .

(5) wearing apparel;

.  .  .  .  .

(6) jewelry not to exceed 25 percent of the aggregate limitations prescribed by Section 42.001(a);

.  .  .  .  .

(12) the present value of any life insurance policy to the extent that a member of the family of

the insured or a dependent of a single insured adult claiming the exemption is a beneficiary of the policy.
Tex.Prop.Code Ann. § 42.002 (Vernon Supp. 1994).

provision for the exemption of cash surrender values of life insurance policies was found in former § 42.002(7) of the Texas Property Code. Apparently, the statutory basis of the debtor's exemption was dictated by the fact that the debtor had already maximized his exemptions allowable under the Property Code. In pertinent part, the debtor argued that the Property Code and the Insurance Code were in conflict and that the later enacted Insurance Code should control. The court disagreed citing two reasons. First, the court held that the legislative history to article 21.22 did not suggest that the relevant section in the Property Code had been repealed. *Id.* at 85. Second, the court determined that the Insurance Code did not provide an exemption for the cash surrender values of insurance policies. *Id.* *Brothers* would be decided differently under the 1991 or 1993 version of article 21.22.[6] First, cash surrender values of qualifying insurance policies are now expressly exemptible. Second, providing for an unlimited exemption for benefits eliminates the need to boot-strap any exemption under article 21.22 within the confines of the Property Code. The last amendment to article 21.22 of the Insurance Code occurred in 1993. As previously stated, these last amendments have not changed the Insurance Code in a manner relevant to the issue before the Court.

Actually, despite numerous amendments, the Insurance Code has continually reaffirmed its elemental character providing an exemption for "... money or benefits of any kind.... to be paid or rendered ... to any beneficiary under any policy of insurance ..." and providing that such money or benefits shall be protected from legal or equitable process to pay the debts of the insured or the beneficiary "... either before or after said money or benefits is or are paid or rendered ..." (Comparison of the 1927, 1951, 1987, 1991, and 1993 versions of article 21.22). Despite this seemingly clear language, Objectors make several arguments in opposition. First, Objectors maintain that a conflict exists between the Property Code and the Insurance Code because Debtor is exempting "cash" and "cash" is not exemptible under the personal exemptions in the Property

Code. This argument is a "red herring." The only basis for the Debtor's exemption is found in the Insurance Code—no conflict with the Property Code exists. Second, Objectors' argument that the language of the article refers only to exemptions for unmatured insurance policies is rejected. As previously stated, the Court finds that the language of the article has always indicated that the exemption continues to exist regardless of the occurrence of payment.

■ Third, Objectors argue that the legislative history to article 21.22 does not support Debtor's exemption. The Court strongly disagrees. Contrary to Objectors' assertion, the available legislative history only confirms Debtor's interpretation. There is no stronger indication of legislative intent than the particular words used by a legislature in drafting a statute. The Court has already concluded that the wording of article 21.22 supports Debtor's exemption claim. The Court is also influenced by the continuing evolution of article 21.22. At all times, while reaffirming its basic principles, it has continued to expand its reach. This legislative trend belies the limited interpretation to article 21.22 Objectors would have this Court apply. Finally, as discussed by *Brothers*, the legislative history to article 21.22, while somewhat limited, clearly indicates an intent to protect surviving spouses and children. 94 B.R. at 85. It would be a meaningless gesture for the Legislature to grant an exemption for the proceeds of unmatured life insurance policies only to deny the exemption once the benefit is realized by the intended beneficiary. Therefore, the Court rejects Objectors' contention that the insurance proceeds, once paid, evolve into nonexempt cash.

■ Fourth, Objectors argue that the 1991 amendments have created an ambiguity with regard to any exemption claim for proceeds in the context of bankruptcy. The alleged conflict arises as a result of the decision of the Texas Legislature to modify article 21.22, Section 1 to specifically enumerate four effects of such an exemption claim. Two of these effects, article 21.22, Section 1(2), (3) were drawn from the body of the 1987 version of article 21.22, Section 1. Sub-

---

6. This should come as no surprise since it appears that the *Brothers* decision was a motivating

factor in the 1991 amendments to article 21.22. Op.Tex. Att'y Gen. No. DM–125 (1992).

sections 1(1), (4) were new additions. Objectors contend that to the extent the proceeds of a life insurance policy are exempt the proceeds are only exempt pursuant to subsection 1(3) which contains the operative words "before or after said money or benefits is or are to be paid or rendered." However, because Debtor has filed bankruptcy, only subsection 1(4) is applicable. Because subsection 1(4) does not contain the triggering language in 1(3), so the argument goes, the insurance proceeds are not exempt. To hold otherwise would render subsection 1(4) meaningless. Objectors' position is without merit. First, the four effects of an article 21.22 exemption are to be read conjunctively not disjunctively. It would not be reasonable to conclude that the Legislature of Texas intended that its citizens be penalized in claiming exemptions on the basis of a bankruptcy filing. Second, the Court finds that the intent of the Texas Legislature in drafting subsection 1(4) was only to further clarify the breadth of the article 21.22 exemption. *See In re Shurley,* 163 B.R. 286, 294 n. 4 (Bankr.W.D.Tex.1993) (Referring to legislative history).

■ Fifth, Objectors argue that allowing Debtor an unlimited exemption for the proceeds of a life insurance policy is in conflict with the policy and spirit of the Federal exemption scheme. The error in Objectors' argument is to assume that there could be a conflict between the state and the Federal exemption scheme. Congress has specifically granted Debtors the right to choose between the state or federal exemption schemes. By so doing, the Bankruptcy Code effectively adopted state exemptions as federal exemption law for bankruptcy purposes. Therefore, it is the state and not the federal government which determines the extent of exemptions to be accorded its citizens. *In re Leva,* 96 B.R. 723, 727 (Bankr.W.D.Tex.1989) (Exemptions represent a statement of public policy). The Legislature of Texas, through article 21.22, has decided to afford its citizens a generous exemption pertaining to the treatment of insurance. Such a policy choice is understandable:

> Insurance exemptions are designed to protect a debtor's family, in the enjoyment of property needed for their support. The theory on which the exemption rests is that the creditor can claim no equity in a fund that has been in no way used as a basis of credit.

31 Am.Jur.2d. *Exemptions* § 180 (1989). Neither is it unusual having been adopted to various extents in several states. 31 Am.Jur. 2d. *Exemptions* § 190 (1989) (citing cases)[7]. The Court finds that Debtor has demonstrated an entitlement to claim the insurance proceeds stemming from the death of her husband as exempt pursuant to article 21.22 of the Insurance Code. However, the Court is still required to determine if Debtor's exemption for insurance proceeds must be reduced to account for any interest which has accrued on the account since December 20, 1990, the date on which the proceeds were paid.

■ A review of the account history related to Debtor's $1,982,805.00 insurance proceeds exemption claim indicates that from December 20, 1990 to the petition date this account has earned $242,468.97 in interest; over $280,000.00 in checks have been drawn against it during this same time period. Similarly, the smaller proceeds account of $11,234.79 has earned $1,234.79 in interest ($10,000.00 death benefit plus interest). There have been no disbursements from this second account. The parties dispute whether any account disbursements should come at the expense of principal through a first in, first out method of accounting (Objectors' position) or at the expense of interest through a last in, first out approach (Debtor's position). No relevant authority has been cited to this Court regarding the proper allocation of these funds.[8] Despite the parties'

---

7. In one of these cases, *In re Douglas,* 59 B.R. 836 (Bankr.D.Kan.1986), the bankruptcy court, on the basis of Kansas exemptions, upheld the exemption of $1,114,346.61 in insurance proceeds.

8. The Court rejects out of hand Objectors' reliance on the rule in Clayton's case. *Clayton's Case,* Merivale 572 (1816 Ch.). *Clayton's case*

espouses the use of the first in, first out method of accounting in resolving conflicting claims to money which has been fraudulently obtained, commingled, and partly dissipated. As explained by the court in *Ruddle v. Moore,* 411 F.2d 718 (D.C.Cir.1969) "it establishes a rebuttable presumption that the trustee wrongfully converted the funds in the order in which they were paid in." *Ruddle* rejected this rule in favor of a pro

framing of this issue as an accounting dispute the Court must find that the interest earned on both accounts is correspondingly exempt as the product of a valid exemption. *See* 35 C.J.S. *Exemptions* § 62 (1960) ("Where specific property is exempted in order that the debtor may have the product for the support of himself and family, the product is also exempt.").

The Court's conclusion is guided by both policy and practical considerations. The purpose behind article 21.22 of the Insurance Code is to provide support. In most cases, the benefits of an insurance policy substitute for the future support that the insured would have provided to his beneficiary had the contingency giving rise to the payment of benefits not taken place. Allowing these insurance proceeds to earn interest only serves to increase the funds upon which the beneficiary can rely for support by way of natural increase and as a method to withstand inflationary pressures in the economy. This serves the intentions of the insured and those of the Texas Legislature. As a practical matter, making the product of insurance proceeds susceptible to seizure by creditors would be unworkable. In Debtor's case, such a rule would require an allocation of any withdrawals from the account between the exempt and nonexempt portion. And presumably any creditors with undischarged debts would have ongoing access to subsequently earned interest on the basis that *any* interest earned on exempt proceeds is nonexempt. The Court is unconvinced that the Texas Legislature would have sanctioned such an interference. Certainly one can hypothesize a case in which admittedly exempt proceeds of an insurance policy and the product therefrom might become so inextricably interwoven with nonexempt assets that the physical determination of the exempt portion becomes impossible. That is not the case before the Court and it is not necessary for this Court to resolve such a supposed set of facts at this time. The Court finds that Objectors have failed to demonstrate that interest earned on either of the access accounts is not similarly impressed with the exemption provided for by article 21.22.

For reasons to be discussed, the Court finds that Debtor has demonstrated an entitlement to all remaining exemption claims made the subject of this hearing. Debtor asserts an exemption in the cash surrender value of two life insurance policies in which she is the insured and her daughters are the beneficiaries. In the aggregate, these policies have a scheduled cash surrender value of $88,464.22. Debtor claims these cash surrender values as exempt pursuant to article 21.22 of the Insurance Code. Objectors' opposition to this exemption claim apparently rests on the argument that any exemption claim for cash surrender values of insurance policies must be read in context with the $30,000.00 limitation on personal property exemptions contained in §§ 42.001, 42.002 of the Texas Property Code.

Recently, this issue was discussed in *In re Bowes,* 160 B.R. 290 (Bankr.N.D.Tex.1993). In *Bowes,* the chapter 7 debtors attempted to exempt $57,000.00 in personal property exemptions pursuant to the Texas Property Code in addition to $77,000.00 in cash surrender values of insurance policies pursuant to article 21.22 of the Insurance Code. The court agreed with the debtors that the Insurance Code provided an unlimited exemption for the cash surrender values of their insurance policies; however, the Court also concluded that such an exemption must be read in context with the limited exemptions for personal property provided in the Texas Property Code. The Court carefully analyzed both sections of the statute in an attempt to reconcile the seeming conflict between the unlimited exemption contained in article 21.22 of the Insurance Code and the $60,000.00 limitation contained in § 42.001 of the Texas Property Code. The Court reconciled the two Codes by granting debtors' total exemption in the cash surrender values of their insurance policies and holding that that unlimited exemption exhausted their limited personal property exemptions under the Property Code. *Id.* at 294; *contra In re Shurley,* 163 B.R. 286 (Bankr.W.D.Tex.1993).

rata distribution. The amalgam of interest and principal in the access accounts has not resulted from any fraudulent conduct. Accordingly, the

rationale and result in *Clayton's case* is of dubious relevancy to the present discussion.

■ Such a conflict does not present itself in this case. This Court finds that Debtor could not have claimed the cash surrender values of those policies on which she was the insured and her daughters were beneficiaries as exempt under the Texas Property Code in any amount. Section 42.-002(a)(12) of the Texas Property Code provides an exemption for "the present value of any life insurance policy to the extent that a member of the family of the insured or a dependent of a single insured adult claiming the exemption is a beneficiary of the policy." The definition of "family" is a term of art in Texas law. Reviewing Texas precedent, the court in *Matter of Hill,* 972 F.2d 116, 119 (5th Cir.1992) determined that "(1) the family relation is one of status, (2) the head of the family must be legally or morally obligated to support at least one other family member, and (3) there must be a corresponding dependence on the other member for this support." *See also In re Evans,* 25 B.R. 105, 107 (Bankr.N.D.Tex.1982). Debtor's two daughters are emancipated, self-supporting adults. As a result of this status, Debtor would be denied an exemption under this provision of the Property Code. Thus the exemption for cash surrender values of life insurance policies was never an exemption that the Debtor could have claimed under the Texas Property Code, therefore, the limitations of the Texas Property Code have no effect on this exemption. The Debtor's claim

to exemption in the cash surrender values of her insurance policies is also sustained.[9]

■ Finally, Debtor has claimed the full $30,000.00 in exemptions pursuant to §§ 42.-001, 42.002 of the Property Code. These exemptions are as follows: personal household furniture ($20,000.00); family heirlooms and jewelry (up to $5,000.00); and personal wearing apparel ($5,000.00). A statutory basis for these exemption claims is found at § 42.002(a)(1), (5), and (6) of the Property Code. Objectors' only objection to this exemption claim was wrapped up in the previously rejected argument that the cash surrender values of Debtor's life insurance policies should count against the personal property exemptions claimed in the Property Code. With one caveat, Debtor's claim to these exemptions under the Property Code is sustained. Debtor is ordered to amend her schedule of exemptions to specifically identify items falling within each class of exemption and its corresponding value to the extent the aggregate value of all these itemizations does not exceed $30,000.00.[10]

For the reasons contained in this opinion the various objections filed in opposition to Debtor's claim to exemptions are overruled.

9. The Court is certainly aware that this analysis, in other factual contexts, would produce what certainly appears to be a most inequitable result. In effect, this holding means that the cash surrender value of an insurance policy when there are no dependent beneficiaries is exempt by virtue of article 21.22 of the Texas Insurance Code. If the analysis in the *Bowes* case is followed, then the limitation on exemptions becomes effective when the insurance beneficiary is a dependent family member who presumably would be most in need of the support provided by the exempt asset. To construe the statute in this fashion under that set of facts would appear to create an inequitable and absurd result that the Legislature could not possibly have intended. However, this Court does not concede that the *Bowes* analysis is the correct analysis under any set of factual circumstances. To the extent that one might determine that the two provisions are in conflict and are irreconcilable, one could look at the statute construction aids provided in § 311.023 of the Texas Government Code which instructs a court to consider among other things the "(1)

object sought to be attained." It is clear from the legislative history of the 1991 legislative session in which the unlimited exemption provision was enacted that the Legislature intended for the Insurance Code exemption provision to eliminate the perceived restrictions that the Property Code placed on the exemptability of insurance proceeds and cash values. Thus, to the extent one might conclude that these provisions are irreconcilable without leading to the inequitable result envisioned in this footnote the legislative intent is clearly that the provision in article 21.22 of the Insurance Code prevail.

10. Although the written objections of First Financial Resolution Enterprises, Inc. and American Federal Bank, F.S.B. both contended that Debtor's itemization of these exemptions was inadequate neither party pursued this objection at the hearing. The Court notes, however, that Debtor has stipulated that all the wearing apparel, furniture, family heirlooms, and jewelry have a value in excess of $30,000.00.